for third and final argument for today Hannah David v. Gina Kaulukukui case number 21-15731 and we will proceed with Mr. Foster. Good morning your honors thank you and thanks for the opportunity if it pleases the court I'm who is a an employee of the County of Kauai and this case is comes from a denial of her motion to dismiss based on qualified immunity and I think before this court is the question whether it's clear to a to a reasonable official that her conduct was unlawful in the situation she found herself and put another way whether pre-existing law provided her with the fair warning that her conduct was illegal and and I would assert that to this day right now it's not clear whether her conduct was illegal. I want to ask you about the one that gives me the most pause in this case which is I guess I'm terming it the defendant here went in after they got a court order and grabbed the you know the child and took took the child away from custody of the parent without any notification to the parent I'm trying to understand how that would ever be thought reasonable maybe there is some circumstance but that's the one that at least at this stage your client would be entitled to qualified immunity in that context. Well I would and I believe that this that question takes us back to to the complaint and the non-conclusory allegations therein it there's nothing in the complaint there are no non-conclusory allegations in the where that that was occurring. Council you represent all the defendants don't you? No no your honor I represent only Gina Calicacui they all and she's the only one who's moved who moved for dismissal. So the other the others are in the case but but that's just they haven't they're not on appeal before us. That's correct your honor. What's what's the relationship between William and Gina? I'm not aware of any relationship prior to this between William and and Gina Calicacui she works for the police department they might know each other I'm not aware and you know her job is essentially assisting victims of domestic abuse with with resources including assisting them in in preparing and filing applications for protective orders. So just so I understand your position you you don't read the complaint as having alleged that your client was involved in actually taking custody of the minor without notifying the parent yeah the parent Hannah Hannah David. That's correct I think by that I think that by the time we get into those facts the complaint is is just rife with conclusory statements about the parties all being. So I understand your position that the complaint doesn't allege that let's let's assume we disagree with you and that we believe that the complaint does allege that your specific client here on appeal could have been or was involved what's your position for why she would be entitled to qualified immunity by going to you know grab the the child without any notification of well that the TRO that was granted certainly doesn't require notification I can imagine in fact that I would say that the statute wouldn't require that because one can imagine situations where it would be important to you know to to secure the safety of a child without the offending parent knowing it was however I would say that there is no legal requirement that that the plaintiff be forewarned she was given notice and there was a hearing which under the statute is within 15 days and that hearing notice Hannah David was given notice not prior to the seizure but after the seizure she was given notice that's sort of the issue here it seems like this see I mean you know and maybe the facts will bear out you know for your client but based on the allegations of the complaint can we just affirmatively say that there's no way that there was a violation of clearly established law here well I think that the standard is not that there's no way there was a violation of established law I think the question is whether she had fair notice that there would be a violation and there are no as I've argued you know in the papers there no one has cited a case or a statute or any precedent that would put her on notice that anything that occurred was a violation of anyone's rights I'd like to whole thing going would you agree that if a government official knowingly withheld material information from a court in getting an order that would interfere with parental rights that that would be clearly established violation of constitutional law all right keying in on your phrase material material information yes in this case as I've argued there there is no statutory requirement so I don't know we're talking about constitutional law here so I'm not sure that a statutory argument is going to save you right so I mean I've embedded that question with a lot of assumptions and I understand you disagree with those but I heard your answer to say if what my question assumes is true there's a clearly established violation so it seems to me that the question here is one whether your client knowingly withheld information from the family law court or helped the father do so and then to whether that information was actually material on the second part I'm not sure based on the allegations that that's much of a question because it seems like the family court indicated in later proceedings that had it known about a custody order it might have it would have done something different so we'll set that one aside is your argument hinging on with regard to the TRO does your argument hinge on whether this plaintiff has plausibly alleged that your client knowingly withheld information from the family court that's certainly that that is one prong of my argument it's a standalone prong and so I don't believe so I don't believe so because the because under the statute and I do understand we're talking about constitutional law but taking her what is clear to her from precedent from law there is no requirement and again I'll back up and say one can imagine why there's no such requirement that a stipulated custody order is relevant to TRO proceeding well hold on the parent let me back you up on that one because maybe that's true in a generic sense but when the custody order here specifically said that the father could not file anything on behalf of the minor child why wouldn't that be relevant when that's exactly what's happening here now maybe maybe there was an escape clause I mean there was that sort of an escape clause for emergency circumstances so yeah so maybe there was an escape clause but to read the the blanket prohibition that this couldn't be done it seems like that would be material to to a court to flesh out whether this was being done in violation of the of the prior custody order well the the protect the family protective order statute here is I guess if in most states is set up so that you know it can deal with exigencies it can occur it can it can facilitate a somewhat quick action for the benefit of in a short amount of time in the return hearing which is also required under the statute and that is the time when all the different facts come together before the court and the court makes its decision so you seem to be making the argument that the protective order just in no way could have been relevant to the initial TRO proceeding it could have only been relevant after the child in a in a subsequent hearing is that is that your argument I believe that's how the statute is is constructed yes your honor so Gina their client excuse me your client for helped William prepare the application for the TRO correct that's any custodial rights in the child I know you're gonna argue she wasn't required to but the answer is no when did she learn of the existence of the under the facts pled in the complaint she could only have learned after she assisted how is that true I mean I'm looking at paragraph 70 of the complaint and the allegation in paragraph 70 is that the defendants had frequent direct contact with the father in the form of text and emails and phones and in-person visits in which they work together at every step with the father to assist with and prepare documents that deliberately misled the family court well and I would first argue that that's entirely conclusory it states factual conclusions without without describing the factual support for those conclusion we must assume to be true for the purpose of this hearing correct no I disagree I conclusory under Iqbal and and Twombly conclusory allegations are not assumed to be true they're not given the assumption of truth so you think that she had to come in that the plaintiff here had to come in with a specific text or a specific date and time of a conversation in order to okay let me repeat the question I guess what I'm trying to understand is your position is under Iqbal and Twombly that the plaintiff here had to instead of just pleading what judge Forrest just read to you in paragraph 70 had to actually say on such and such a date you know they had this specific conversation or there was this specific text is is that your position that this is like a fraud standard no no your honor and I would not say that it's no not at all that it's it's that strict however what I would say is this complaint just alleged on unbelief this this conclusory you know conclusion that they were all talking about every step of the way the complaints that are filed in federal court I mean I well presume are you are you suggesting that that plaintiff or plaintiff's counsel like violated the rules in in making this conclusory statement that they didn't do an investigation or have reason to I would not disparage counsel what I am saying is it is insufficiently pleaded if they if they had more information that it should have gone into the complaint to give us some reason to believe that it's plausible that at every step of the way they were in contact with each other that is just a conspiracy then and all one would have to do it say well I think they all were in cahoots and that would be enough well you still have to prove this up but I'm not anyway we'll have to make the decision on whether we agree with your position on the on the pleading status when did Gina learn of the existence of I'm asking about your client you mean away coming away from the very simple question counsel when did Gina first learn of the existence of the custody order she will first learned of it after after the looking for a date do we know what date I don't have a date before me your honor it was but it was after the grab-and-go I'm not certain it was that no I I would say it was between her preparing the TRO application and the grab-and-go between sometime between and I don't have a date and I you know my the focus of my argument has been on here's my last question yes sir did she ever inform the family court that she was that there was a custody order and that it was inappropriate to prepare and an application for a TRO neglecting this no and I would assert that the the reason is her job is to assist people in that come to her and say I've been the victim of family abuse and she assists them in filling out a TRO application that's her job again the system is set up in such a way that all these facts will come together and at the return hearing within 15 days which is what happened here she I would also say she didn't need to inform the court because the court was aware at that return hearing it the court became aware of that at that time she they were informed so is it fair to infer that she's never expressed remorse over this omission in the application for a TRO I I don't know that I don't know I I've not in I don't have those kinds of communications with her okay thank you I have just one father I know we're running out of time but I mean it seems like you've got an uphill battle here because the arguments that you're making just sort of miss the human situation that's happening I mean this case is about I think an 11 year old girl who's taken out of school by people she has no idea who they are and put in the custody of somebody who she hasn't had a relationship for seven years and and the explanation is you know that's fine because we have a statute that allows us to do these things I guess I've just the arguments that you're making today just seem to not recognize who was impacted by what happened here it wasn't your client it was this little girl well and then I feel constrained by the complaint and how it's plugged but if we get away from the complaint her attack on the father at the station was videotaped and frankly she's acting completely out of initiated the this all occurred under the the CPS statutes and and they did investigations of her and found for a while that they were concerned about her mental health and that the child was not safe with her this is not pled this is why I haven't argued it but if we get outside of the complaint there are many many facts that this case seems like you know needs to be tried right there's all kinds of facts and this is messy well except that I think that the bottom line is that it is just not clear to a reasonable official that that assisting with with filling out a TRO petition without knowing all the facts is was was a violation of anyone's constitutional rights and I mean her assumption is the system is set up to deal to to to to absorb those facts after the exigency of the you know the danger to the child has been mitigated and so I think that that's how the system is viewed I would say by you know by an employee of the police states the police department whose job is to assist victims of domestic abuse okay counsel thank you we'll give you a minute for rebuttal I thank you very much yeah we'll hear from mr. Yolkin good morning your honors may it please the court Kevin Yolkin on behalf of the plaintiff appellee miss Hannah David I'd like to just answer a couple of the court's questions here because I think the court certainly has hit this directly on the head this case and the appellants motion for qualified immunity at this stage is far premature given the entire factual situation that's at hand here what's you know at at base this case is not complicated and at least for the purposes of this motion the court's decision today is not complicated the appellants actions were unquestionably intentional in material and when withholding material well let's be clear what we're talking about clearly intentional as pled in the complaint I it does sound I mean I'm I think you've got a pretty good case on the complaint but I am concerned about an argument that if it turns out that Gina did not know about the court order when the TRO was obtained I'm not entirely sure that she wouldn't be entitled to qualified immunity if those facts bear out so I just could you address that you've alleged in the complaint that's what we're dealing with that that Gina knew about it before she went in to file for the TRO but if it turns out that that fact was not true do you think then Gina would be entitled to qualified immunity at least as to obtaining the TRO in the first place the short answer your honor would be no but I'll back up and explain first off to answer your colleagues questions about whether or not miss Kala Kukui knew I don't expect this court to have a handle on the very complicated procedural history of this case at this point but this was an emergency situation where the plaintiff's daughter was ripped from her hands without any prior notice she was taken to another island placed with an estranged biological parent who had no relation to this child and who from whom custody had been taken away by court order no visitation no custodial rights and no legal rights now we know because the father filed the counter claim that miss Kala Kukui knew prior to preparing the TRO that this custody order was in existence I understand that's not fled in the complaint but the in in a rush of trying to obtain custody of this young child when you say that wasn't played you mean that specific fact wasn't played not that I mean you did plead that she knew before filing the TRO yes your honor and the district court correctly found that that's easily inferred from the allegations in the complaint but at the time we did not know whether or not miss Kala Kukui the appellant knew of the custody order we know now that she did and yet she withheld that information we also know now that the custody order came to the attention of child welfare services workers prior to the seizure of the 11 year old girl yet nothing was done about that and we do have text messages and communications and emails but this case has been stymied for over two years now at this point because the appellant has continued to file motions continue to impede our ability to proceed and to get discovery on those types of issues but the issue before the court now you know the court has certainly asked pertinent questions about the constitutional right at issue it's not looking at the legal rights of the biological father it's not looking at the state statutes that may or may not grant child welfare services to do certain acts it's about the appellant and her actions that are alleged in the well-established purposes of the 1983 claim the causation is established by a person who sets in motion an action that leads to a constitutional violation unquestionably that is what the appellant has done in this case and she simply dismisses all of the allegations against their counsel you mentioned that some of these please were put together in kind of a rushed fashion on behalf of first-amended complaint we are your honor and the first minute complaint was filed several months later I was basically to include names of individuals who had changed but as I stated before we haven't been able to the rush to in the understandable rush to return the child to her mother is not an excuse for any failings that might exist in the first-amended complaint correct no I don't believe so but I don't believe there are any shortcomings in the first amendment complaint for the purpose of your position but you argued earlier to us that that rush was the reason the complaint is not more specific well I apologize your honor we have not had an opportunity to conduct more in-depth discovery to provide additional allegations and to substantiate facts as as your colleague pointed out there are a number of facts that are all over the place in this case that needs to be fleshed out the bottom line is if the if the complaint is entitled the complaint is entitled to all reasonable inferences at this stage and if it's given the presumption of question that miscalculations actions violated clearly established law due process rights require that a pre-deprivation hearing is held before a child can be taken from a parent that is a fundamental basic aspect of due process and custodial rights counsel with regard to this particular defendant are you including here in terms of your claim based on the grab-and-go we've calling it the the taking of the child from school are you including this defendant as part of that action are you focusing on this defendant with regard to the TRO well the principal focus I think for the purpose of this motion is the TRO but the defendant was also an instrumental actor in the actual seizure and in the events that follow the seizure that prolonged the deprivation of miss David's constitutional right and that's to the custody of her child what happened was absolutely inexcusable and counsel's arguments that were just made to the court are frankly they raise very serious concerns about a law enforcement officer who believes and it's just her duty to simply rubber stamp a very serious restraining order application that's going to take a child away from her custodial parent certainly law enforcement officers have a far greater responsibility and every reasonable law enforcement officer knows that they cannot deceive what let me ask you this what what if she had what if she was aware of the the custody order but thought and had reasonable belief that this fit within an exigent circumstance that was contained within the custody order would would your claim still stand that there was a yes and for two reasons first of all in an exigent circumstance situation a post-deprivation hearing is required promptly it's not based upon the statute of it's not based upon the child welfare statutes of Hawaii that's based on constitutional law when a child is temporarily taken from their parents because a serious imminent imminent threat to serious bodily injury occurs that permits a temporary custodial deprivation but post-hearing so you're a musician just make sure I understand it your position is if if Gina thought that that it did fit within an exigent circumstance and therefore was that she would have had to seek a return or hearing within sooner than 15 days is that is that your position well if the appellant thought that there were exigent circumstances perhaps the situation may be different but even so Ninth Circuit precedent going back to as early as 1991 in Caldwell the favor clearly establishes that a parent has a due process right to a hearing when a child is moved and placed with an individual without legal custody that did not happen here there's no question that that due process hearing which must be immediately after any deprivation occurs did not happen in this case there is also precedent from sister circuits although I couldn't identify a specific case dealing with the exact issue at hand here well for qualified sister circuits aren't quite as helpful what go back to that Ninth Circuit case that you were referencing what was that case Caldwell be the favor that's le f a ver 928 f second 331 that case cites to several cases from the 10th Circuit and from the 4th Circuit where it's clearly established that it's unlawful to remove a child without a hearing prior and specifically a 10th Circuit case Hollingsworth v. Hill which the 9th Circuit cites to an officer serving a TRO should still give a parent opportunity to comply or have a hearing prior to just removing a child from custody these are fundamental rights that to imagine the trauma that miss Daven and her child suffered from this to me and that these state actors work together from the very beginning up until the very end and then continue to to grasp at straws to keep this child away from this David is just continuing to try and keep miss David from a child that's been resolved now right the only claim here is that had 20 what's that it has been resolved now but for a period of several weeks almost three and a half weeks miss David was without her child so your honor your honors this case as you pointed out depends on many factual situations that haven't yet been borne out this color cuckoo is not entitled to qualified immunity at this early stage because every reasonable officer knows that her conduct that issue is unlawful and I just want to briefly address some of the supplemental authorities that the appellant cited to understandably the Supreme Court has been hesitant to accept qualified immunity in in the types of cases that are a close call and typically what we see is those are Fourth Amendment cases where there's a split-second decision often involving the shooting of somebody life-or-death scenario but this case is not analogous to that at all these decisions made by various defendants at various times and the appellant throughout from start to finish were calculated they were reasoned and we would submit that they were intentional and malicious which which certainly overcomes qualified immunity if your honors have no further questions I will yield back okay we'll hear rebuttal I will give you two minutes for rebuttal thank you your honor I was just looking through mr. Kea he Lalo's counterclaim I don't see any allegations whatsoever that he told Gina about any stipulation in that counterclaim your honors pointed out that the complaint was not hastily pled in fact it was in fact dismissed at one point against it and there was another motion a motion against their their proposed amended complaint and several counts against Gina were dismissed at that stage too so when they say you know we've been stymieing this whole thing the only motion in fact that I lost is the one we're here on council we've been talking about a lot of different things as part of this argument I want to kind of come back to what I think for me is the key and get your response one more time I think that the key to this case is whether there is a plausible allegation in this complaint that your client knew about the custody order before she helped the father get the TRO so I guess I have a two-part question do you agree that that's the to the resolution of this appeal or not I I don't think so and and the reason is I think that in and you know we were talking about using the term exigencies and I think that's misplaced here as well again the purpose of the Child you know when we talk about that the child was still kept from the mother for X number of weeks that's because the child was in the CPS system and the mother was going to hearings and there was a there was a there was a family plan in place and she had to do certain things in order to satisfy the court that she was fit to to have custody of her child her child was taken away from from from the father but she was then placed with other in other foster care and then she was with people who weren't her family at all so because I'm not quite sure I understand your answer but I think that this must be it the answer is it doesn't matter if she knew about the custody order before because even if she did the circumstances justified her going into the family court and helping the father get the TRO without regard to the custody order and without regard to telling the family court that it existed right well yeah so she did not go into the court your answer is yes she yeah I would say that that is my argument all right that is my argument okay counsel thank you both for your arguments in this case with it submitted and that concludes our arguments for today and the court will be in recess all rise for this session stands adjourned thank you
judges: HAWKINS, NELSON, FORREST